**ORIGINAL**

FILED IN OPEN COURT
U.S.D.C. - Atlanta

SEP 21 2021

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ERIC SAAH THOMPSON,
JESSICA RENEA NOLEN,
BRANDY BREYAN CAUSEY-LEE AND
DANIELA VARGAS

Criminal Indictment

No. **1:21CR0374**

**UNDER SEAL**

THE GRAND JURY CHARGES THAT:

**Count One**
18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

1. Beginning on a date unknown to the Grand Jury, but from at least in or about December 2016, and continuing through at least in or about May 2018, in the Northern District of Georgia, and elsewhere, the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding with one another, and with others known and unknown to the Grand Jury, to commit certain offenses, that is, to devise and intend to devise a scheme and artifice to defraud others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as well as by omission of material facts; and for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted, by

means of wire communication in interstate commerce, certain writings, signs, signals and sounds, that is, wire transfers from financial institutions located outside of the Northern District of Georgia to the Northern District of Georgia, in violation of Title 18, United States Code, Section 1343.

### Manner and Means

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

2.  It was a part of the conspiracy that from at least in or about December 2016, and continuing through at least in or about May 2018, the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, and others known and unknown to the Grand Jury, targeted legitimate businesses in the United States and elsewhere through social engineering and computer intrusion techniques in order to fraudulently induce such businesses to wire funds to bank accounts controlled by the defendants, rather than to the legitimate bank accounts of the businesses and persons who were owed the funds.

3.  It was further a part of the conspiracy that the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, and others known and unknown to the Grand Jury, used "spoofed" email addresses, that is, email addresses that appeared nearly indistinguishable from a business's legitimate email addresses, to email an employee responsible for initiating wire transfers as part of a business transaction, in order to instruct that employee to wire a large sum of money that

2

the business legitimately owed the "spoofed" businesses and individuals to specific bank accounts controlled by the defendants.

4.  It was further a part of the conspiracy that the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, and others known and unknown to the Grand Jury, obtained personally identifiable information of persons and, using such information and fraudulent identification documents, gained control of bank accounts held in the persons' names.

5.  It was further a part of the conspiracy that the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, and others known and unknown to the Grand Jury, while purporting to be the true account holder, directed the bank to transfer funds to specific bank accounts controlled by the defendants.

6.  It was further a part of the conspiracy that once the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, received the funds in the bank accounts controlled by them, the defendants quickly withdrew the funds and transferred the funds to accounts at other financial institutions.

All in violation of Title 18, United States Code, Section 1349.

**Counts Two through Three**
18 U.S.C. § 1343 and § 2
(Wire Fraud)

7.  The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 4 of this Indictment as if fully set forth herein.

**Execution of the Scheme**

8.  In or around January 2017, D.P., a resident of California, held an account at a financial institution with the initials K.C.U.

9.  In or around March 2017, D.P. attempted to log-in to his K.C.U. account, but his access was denied.

10. Upon review of the activity in the account, D.P. learned that K.C.U. had changed his account information based on a request that K.C.U. believed came from D.P. and that, soon thereafter, tens of thousands of dollars had been wired from his account.

11. Specifically, on or about January 17, 2017, a person falsely purporting to be D.P. contacted K.C.U. and changed the username and password for online access to the account and also changed the contact information, including the email address and telephone number.

12. Approximately one month later, on or about February 3, 2017, a person purporting to be D.P. requested a wire transfer in the amount of $82,210 to JP Morgan Chase account ending 9761, titled in the name of Synergy Workforce, Inc.

13. Approximately four days later, on or about February 7, 2017, a person purporting to be D.P. requested a wire transfer in the amount of $148,500 to Bank of America account ending 9180, titled in the name of Synergy Workforce, Inc.

14. Synergy Workforce, Inc. was a company created and organized in the State of Georgia on or about September 16, 2016.

15. Defendant VARGAS, using the title of "President" of Synergy Workforce, Inc., opened JP Morgan Chase account ending 9761 and was the sole authorized signer on the account.

16. Defendant VARGAS, using the title of "President" of Synergy Workforce, Inc., opened Bank of America account ending 9180 and was the sole authorized signer on the account.

## Wire Communications

17. Beginning on or about each date listed below, in the Northern District of Georgia, and elsewhere, the defendant, DANIELA VARGAS, and others known and unknown to the Grand Jury, aided and abetted by one another, for the purpose of executing the scheme and artifice to defraud, and to obtain money and property as set out in Paragraphs 7 through 16 of this Indictment by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, did, with intent to defraud, knowingly cause to be transmitted in

interstate and foreign commerce, by means of wire communication, certain

writings, signs, signals and sounds, the wire transfers, listed below:

| Count | Date (On or about) | Account Receiving Wire | Amount Wired |
|---|---|---|---|
| 2 | 2/3/2017 | JP Morgan Chase Bank account ending 9761, titled in the name of Synergy Workforce, Inc. | $82,210 |
| 3 | 2/7/2017 | Bank of America account ending 9180, titled in the name of Synergy Workforce, Inc. | $148,500 |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## Count Four
18 U.S.C. § 1343 and § 2
(Wire Fraud)

18. The Grand Jury re-alleges and incorporates by reference Paragraphs 2

through 4 of this Indictment as if fully set forth herein.

## Execution of the Scheme

19. A company located in China with the initials S.H.W. had a legitimate

business relationship with a Virginia-based logging export company with the

initials A.L.C.

20. On or about September 12, 2017, S.H.W. received an email from an account

that appeared to belong to an employee at A.L.C. The email falsely represented

that A.L.C. had a new "sister company" named B & D Brokerage LLC, which

would be handling all of A.L.C.'s finances and payments. The email also falsely

represented that A.L.C. had changed its banking information, including its

wiring instructions, and directed S.H.W. to wire invoice payments to B & D

Brokerage LLC's Bank of America account ending 8306.

6

21. B & D Brokerage LLC, however, was not a "sister company" to A.L.C., but was a shell company created and organized in the State of Georgia by Defendant CAUSEY-LEE.

22. Based on these false representations, on or about September 14, 2017, S.H.W. wired an invoice payment to the B & D Brokerage LLC Bank of America account ending 8306, believing that it belonged to A.L.C.

23. Soon after S.H.W. sent the wire, it was discovered that the email that S.H.W. believed had been sent from the employee at A.L.C. had been spoofed and, therefore, was fraudulent.

### Wire Communication

24. On or about September 14, 2017, in the Northern District of Georgia, and elsewhere, the defendant, BRANDY BREYAN CAUSEY-LEE, and others known and unknown to the Grand Jury, aided and abetted by one another, for the purpose of executing the scheme and artifice to defraud, and to obtain money and property as set out in Paragraphs 18 through 23 of this Indictment by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, did, with intent to defraud, knowingly cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals and sounds, a wire in the amount of $45,236 from S.H.W.

to Bank of America account ending 8306, titled in the name of B & D Brokerage LLC.

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## Counts Five through Six
18 U.S.C. § 1343 and § 2
(Wire Fraud)

25. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 4 of this Indictment as if fully set forth herein.

### Execution of the Scheme

26. A company located in China with the initials S.S.S.C.C. had a legitimate business relationship with a Wisconsin-based lumber export company with the initials K.L.C.

27. Beginning from at least in or about November 2017 and continuing through at least in or about January 2018, S.S.S.C.C. received emails from an account that appeared to belong to an employee at K.L.C.  The emails directed S.S.S.C.C. to change the previous wire instructions for K.L.C. and to wire certain invoice payments supposedly for K.L.C. to other bank accounts, including an account in the name of J & E Brokerage, LLC.

28.  J & E Brokerage, LLC, however, was not associated with K.L.C.

29. J & E Brokerage, LLC was a shell company created and organized in the State of Georgia by Defendant NOLEN.

30. Based on these false representations, S.S.S.C.C. sent a series of invoice payments to J & E Brokerage, LLC, believing that the payments were in satisfaction of invoices owed to K.L.C.

31. It was ultimately discovered that the emails that S.S.S.C.C. believed had been sent from an employee at K.L.C. had been spoofed and, therefore, were fraudulent.

## Wire Communications

32. Beginning on or about each date listed below, in the Northern District of Georgia, and elsewhere, the defendant, JESSICA RENEA NOLEN, and others known and unknown to the Grand Jury, aided and abetted by one another, for the purpose of executing the scheme and artifice to defraud, and to obtain money and property as set out in Paragraphs 25 through 31 of this Indictment by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, did, with intent to defraud, knowingly cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals and sounds, the wire transfers, listed below:

| Count | Date (On or about) | Sender of Wire | Account Receiving Wire | Amount Wired |
|-------|--------------------|----------------|------------------------|--------------|
| 5 | 12/15/2017 | S.S.S.C.C. | JP Morgan Chase Bank account ending 3078, titled in the name of J & E Brokerage LLC | $44,411.53 |

| Count | Date (On or about) | Sender of Wire | Account Receiving Wire | Amount Wired |
|-------|--------------------|-----------------|--------------------------|---------------|
| 6 | 12/29/2017 | S.S.S.C.C. | JP Morgan Chase Bank account ending 3078, titled in the name of J & E Brokerage LLC | $51,511.60 |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

### Count Seven
18 U.S.C. § 1343 and § 2
(Wire Fraud)

33. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 4 of this Indictment as if fully set forth herein.

### Execution of the Scheme

34. In or around November 2017, an individual with the initials D.M. maintained an individual retirement account with an asset management firm located in Kansas with the initials C.E.A.

35. In or around November 2017, C.E.A. received an email from an account that appeared to belong to D.M., requesting that C.E.A. wire the amount of $128,000 to D.M. at JP Morgan Chase Bank account ending 6525, titled in the name of The Jubilant Group LLC.

36. D.M., in fact, had no association with The Jubilant Group LLC.

37. The Jubilant Group LLC was a shell company created and organized in the State of Georgia by S.C., an individual known to the Grand Jury, at the direction of Defendant THOMPSON.

38. Based on these false representations, however, on or about November 27, 2017, C.E.A. wired $128,000 to JP Morgan Chase Bank account ending 6525.

10

39. Soon after C.E.A. sent the wire, it was discovered that the email that C.E.A. believed had been sent from D.M. was fraudulent.

### Wire Communication

40. On or about November 27, 2017, in the Northern District of Georgia, and elsewhere, the defendant, ERIC SAAH THOMPSON, and others known and unknown to the Grand Jury, aided and abetted by one another, for the purpose of executing the scheme and artifice to defraud, and to obtain money and property as set out in Paragraphs 33 through 39 of this Indictment by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, did, with intent to defraud, knowingly cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals and sounds, a wire in the amount of $128,000 from C.E.A. to JP Morgan Chase Bank Account ending 6525, titled in the name of The Jubilant Group LLC.

All in violation of Title 18, United States Code, Section 1343 and Section 2.

### Count Eight
18 U.S.C. § 1343 and § 2
(Wire Fraud)

41. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 4 of this Indictment as if fully set forth herein.

11

## Execution of the Scheme

42. In or around May 2018, an individual with the initials D.E.T. sold a piece of real property located in California. As a part of the transaction, D.E.T. utilized a California-based escrow company with the initials O.R.T.

43. Around the time of the closing of the sale, O.R.T. received an email that it believed to be from, or on behalf of, D.E.T., that instructed O.R.T. to wire the proceeds of the sale for D.E.T. to The Jubilant Group LLC, SunTrust Bank account ending 1393.

44. D.E.T., in fact, had no association with The Jubilant Group LLC.

45. The Jubilant Group LLC was a shell company created and organized in the State of Georgia by S.C., an individual known to the Grand Jury, at the direction of Defendant THOMPSON.

46. Based on these false representations, however, on or about May 4, 2018, O.R.T. wired $165,526.64 to The Jubilant Group LLC, SunTrust Bank account ending 1393.

47. Soon after O.R.T. sent the wire, it was discovered that the email that O.R.T. believed had been sent from D.E.T. was fraudulent.

## Wire Communication

48. On or about May 3, 2018, in the Northern District of Georgia, and elsewhere, the defendant, ERIC SAAH THOMPSON, and others known and unknown to the Grand Jury, aided and abetted by one another, for the purpose of executing the scheme and artifice to defraud, and to obtain money and property as set out in Paragraphs 41 through 47 of this Indictment by means of

materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, did, with intent to defraud, knowingly cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals and sounds, a wire in the amount of $165,526.64 from O.R.T. to SunTrust account ending 1393, titled in the name of The Jubilant Group LLC.

All in violation of Title 18, United States Code, Section 1343 and Section 2.

### Count Nine
18 U.S.C. § 1956(h)
(Money Laundering Conspiracy)

49. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 4 of this Indictment as if fully set forth herein.

50. Beginning on a date unknown to the Grand Jury, but from at least in or about December 2016, and continuing through at least in or about May 2018, in the Northern District of Georgia and elsewhere, the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, and others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, agree and have a tacit understanding with one another, to knowingly engage and attempt to engage in monetary transactions by, through and to a financial institution, affecting interstate and

foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

**Count Ten**
18 U.S.C. § 1957 and § 2
(Money Laundering)

51. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 4 of this Indictment as if fully set forth herein.

52. On or about February 8, 2017, in the Northern District of Georgia, and elsewhere, the defendant, DANIELA VARGAS, and others known and unknown to the Grand Jury, aided and abetted by one another, did knowingly engage and attempt to engage in the following monetary transaction by, through and to a financial institution, affecting interstate and foreign commerce, such transaction knowingly involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in that Defendant VARGAS wired $23,600 from Bank of America account ending 9198, titled in the name of Synergy Workforce, Inc.

All in violation of Title 18, United States Code, Section 1957 and Section 2.

**Count Eleven**
18 U.S.C. § 1957 and § 2
(Money Laundering)

53. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 4 of this Indictment as if fully set forth herein.

54. On or about September 15, 2017, in the Northern District of Georgia, and elsewhere, the defendant, BRANDY BREYAN CAUSEY-LEE, and others known and unknown to the Grand Jury, aided and abetted by one another, did knowingly engage and attempt to engage in the following monetary transaction by, through and to a financial institution, affecting interstate and foreign commerce, such transaction knowingly involving criminally derived property of a value greater than $10,000, and such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in that Defendant CAUSEY-LEE wired $31,500 from Bank of America account ending 8306, titled in the name of B & D Brokerage LLC.

All in violation of Title 18, United States Code, Section 1957 and Section 2.

**Count Twelve**
18 U.S.C. § 1957 and § 2
(Money Laundering)

55. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 4 of this Indictment as if fully set forth herein.

56. On or about November 28, 2017, in the Northern District of Georgia, and elsewhere, the defendant, ERIC SAAH THOMPSON, and others known and

15

unknown to the Grand Jury, aided and abetted by each other, did knowingly

engage and attempt to engage in the following monetary transaction by, through

and to a financial institution, affecting interstate and foreign commerce, such

transaction knowingly involving criminally derived property of a value greater

than $10,000, and such property having been derived from a specified unlawful

activity, that is, wire fraud, in violation of Title 18, United States Code, Section

1343, in that Defendant THOMPSON directed S.C., an individual known to the

Grand Jury, to wire $80,000 from JP Morgan Chase account ending 6525, titled in

the name of The Jubilant Group LLC, to an account at a financial institution,

titled in Defendant THOMPSON's name.

All in violation of Title 18, United States Code, Section 1957 and Section 2.

### Count Thirteen
18 U.S.C. § 1957 and § 2
(Money Laundering)

57. The Grand Jury re-alleges and incorporates by reference Paragraphs 2

through 4 of this Indictment as if fully set forth herein.

58. On or about December 18, 2017, in the Northern District of Georgia, and

elsewhere, the defendant, JESSICA RENEA NOLEN, and others known and

unknown to the Grand Jury, aided and abetted by each other, did knowingly

engage and attempt to engage in the following monetary transaction by, through

or to a financial institution, affecting interstate and foreign commerce, such

transaction knowingly involving criminally derived property of a value greater

than $10,000, and such property having been derived from a specified unlawful

activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in that Defendant NOLEN made a cash withdrawal in the amount of $20,000 from JP Morgan Chase Bank account ending 3078, titled in the name of J & E Brokerage LLC.

All in violation of Title 18, United States Code, Section 1957 and Section 2.

## Forfeiture

59. Upon conviction of one or more of the offenses alleged in Counts One through Eight of this Indictment, the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds the person obtained directly or indirectly as the result of such violation. The forfeited property includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Eight of the Indictment.

60. Upon conviction of one or more of the offenses alleged in Counts Nine through Thirteen of this Indictment, the defendants, ERIC SAAH THOMPSON, JESSICA RENEA NOLEN, BRANDY BREYAN CAUSEY-LEE and DANIELA VARGAS, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in

17

such offense, or any property traceable to such property.  The forfeited property includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts Nine through Thirteen of the Indictment.

61. If any of the property described above, as a result of any act or omission of a defendant:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)   has been placed beyond the jurisdiction of the Court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

the United States of America intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1)

and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

A _____ BILL

_____
FOREPERSON

KURT R. ERSKINE
*Acting United States Attorney*

SEKRET SNEED   Digitally signed by SEKRET SNEED
               Date: 2021.09.20 05:02:58 -04'00'

SEKRET T. SNEED
*Assistant United States Attorney*
Georgia Bar No. 252939

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181